IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS IVÁN VELÁZQUEZ-DE-JESÚS; GLORILY BARROSO-MUÑOZ; GIAN CARLOS VELÁZQUEZ-BARROSO; GLORIANA VELÁZQUEZ-BARROSO; UBALDO VELÁZQUEZ-RIVERA,

v.

SGT. LESLIE ZENO-SANTIAGO,

Defendant

CIVIL 07-1393 (ADC)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 9, 2007, plaintiffs filed a complaint seeking money damages for violation of civil rights under the Constitution and laws of the United States pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the United States Constitution. (Docket No. 3.) The court's supplemental jurisdiction is also invoked based upon state law tort claims. The defendants were then Banco Popular de Puerto Rico, Angelo Vidot (branch manager), Sergeant Leslie Zeno-Santiago, Sergeant Torres, Officer Ramos, and two Doe defendants. (Docket No. 3.) Only Leslie Zeno-Santiago remains. Except for Sergeant Torres, who was dismissed based upon Federal Rule of Civil Procedure 4(m), the other defendants were voluntarily dismissed.

CIVIL 07-1393 (ADC)                              2

Plaintiff Velázquez de Jesús alleges that on May 8, 2009, while he was at Banco Popular to make a deposit, a bank employee called the police and reported that plaintiff was planning to rob the bank. (Docket No. 39-2, at 3, ¶¶ 11-17.) Plaintiff alleges that the police subsequently unlawfully arrested and searched him without justification. (Id. ¶ 15.) Gian Carlos Velázquez-Barroso, Gloriana Velázquez-Barroso, Glorily Barroso-Muñoz, Ubaldo Velázquez-Rivera are all family members of Carlos Iván Velázquez-de-Jesús, and all allege that they suffered emotional distress and damages as a result of the alleged unlawful arrest suffered by plaintiff Carlos Iván Velázquez-de-Jesús.

This matter is before the court on defendant Leslie Zeno-Santiago's motion for summary judgment filed on August 7, 2009. (Docket No. 92.) On September 3, he filed certified translations of Exhibits 4, 5, 6, 13 and 15 to that motion. As of this writing, the motion for summary judgment remains unopposed. In practical terms, this means that plaintiffs are deemed to have waived objection to the motion for summary judgment. See Local Rules of the United States District Court for the District of Puerto Rico, Rule 7.1(b) (2004).

Based on the arguments and evidence submitted by the defendant, I recommend that the motion for summary judgment be granted and that this case be dismissed in its entirety.

CIVIL 07-1393 (ADC)                         3

## DISCUSSION

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

CIVIL 07-1393 (ADC)                    4

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). The court must determine whether either party is entitled to judgment as a matter of law on facts that are not disputed. Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

LOCAL RULE 56

In the District Court of Puerto Rico, Local Rule 56(b), previously Local Rule 311(12), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute. These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material facts establishing that there is a genuine issue in dispute. Local Rules of the United States District Court for the District of Puerto Rico, Rule 56(e) (2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

CIVIL 07-1393 (ADC)                                    5

Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see also Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000). Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party. Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33. The defendant has complied with this local anti-ferret rule, specifically making reference to the places in the record where the facts are harvested from.

In this case plaintiffs submitted no opposition to the defendant's motion for summary judgment. That opposition was due on August 24, 2009. Notwithstanding the lack of opposition, the fact that the motion for summary judgment remains unopposed for our purposes is not conclusive and does not in itself justify summary judgment. López v. Corporación Azucarera de P.R., 938 F.2d 1510, 1517 (1st Cir. 1991). "[T]he district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether summary judgment would be legally appropriate." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 452 (1st Cir. 1992) (quoting Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991)); see also Empress Hotel v.

CIVIL 07-1393 (ADC)                            6

Puerto Rico, 218 F. Supp. 2d 189, 197 (D.P.R. 2001).  In fact, before granting summary judgment the court must make sure that the moving party has met its burden demonstrating that there are undisputed facts entitling that party to judgment as a matter of law.  Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).  Nonetheless, the statement of uncontested facts is taken as true.

The following facts are gathered from the defendant's statement of uncontested material facts, all of which, again, are taken as true.  (Docket No. 91.)  On May 8, 2006, plaintiff Carlos I. Velázquez-de-Jesús went to a Banco Popular branch to withdraw some money from his bank account.  He was wearing a hooded jacket and wore the hood over his head.  He was also wearing sunglasses inside the bank branch.  (Docket No. 91.)  His face was not visible due to the hood he had over his head and the dark shades he was wearing.  His attire made the employees and clients of the bank nervous.  Carmen Alicia-Rodríguez, a Popular Securities employee present at the Banco Popular Branch of Arecibo Highway, originated a telephone call to the Puerto Rico Police Department.  In response to the telephone call, the defendant, as well as other police officers attached to the Puerto Rico Police Department, went to the bank to investigate the information. (Docket No. 91, at 2, ¶ 7.)  When the defendant arrived, Sergeant Torres and the Special Operations Division officers were already there.  Once Mr. Velázquez-de-Jesús exited the bank glass doors, Sergeant Torres and the

CIVIL 07-1393 (ADC)                              7

police officers intervened with him.  They asked him to stand against the wall. (Docket No. 91, at 2, ¶ 10.)  Mr. Velázquez-de-Jesús took his jacket off and placed his personal belongings and jacket on the floor.  (Docket No. 91, at 3, ¶ 11.)  Sergeant Torres requested identification of Mr. Velázquez-de-Jesús, who voluntarily gave him his military identification.  Shortly, the identification was returned. Mr. Velázquez-de-Jesús then left the bank while speaking on his cellular phone.  (Docket No. 91, at 3, ¶ 13.)  No member of the Police Department punched, slapped, assaulted nor physically harmed Mr. Velázquez-de-Jesús. (Docket No. 91, at 3, ¶¶ 14-17.)  The police did push Mr. Velázquez-de-Jesús up against the wall.  He was not physically hurt by the police.  No handcuffs were placed on him.  No criminal charges were filed against him and he was not taken to the police station.  (Docket No. 91, at 4, ¶¶ 19-21.)  On the same day, Mr. Velázquez-de-Jesús placed an administrative complaint at the Public Integrity Division of the Puerto Rico Police Department regarding what had happened. (Docket No. 91, at 4, ¶ 22.)  He wrote the following statement: "I was at the Banco Popular withdrawing some money when I noticed that five police officers dressed in black went into the Banco Popular branch.  When I stepped out of the bank, the agents intervened with my person alleging that they had received a call that I was there to hold the bank up which I denied and I asked them if they had some sort of warrant against my person.  This turned into a discussion." (Docket

CIVIL 07-1393 (ADC)                              8

No. 91, at 4, ¶ 23.)  Mr. Velázquez-de-Jesús has no knowledge of an agreement between the Banco Popular de Puerto Rico and the police officers to cause him harm, nor of a similar agreement between any bank employee and the police, nor of any agreement between Carmen Rodríguez and the police officers.  He had no knowledge of any communications between the bank and police officers to cause him harm.  Sergeant Leslie Zeno-Santiago has never had an administrative complaint against him since joining the police on April 10, 1991.  (Docket No. 91, at 5, ¶ 30).  With these uncontroverted facts in mind, I consider the law applicable to the case according to the pleadings.

## TITLE 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Title 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

CIVIL 07-1393 (ADC)                              9

In order for a defendant to be held liable under section 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Considering the uncontested facts, it is difficult to determine which specific acts or omissions were made by the remaining defendant which actually violated plaintiff's civil rights. The complaint groups the activity of the police officers together. There is no evidence of conspiracy and there is nothing to contradict the statement of uncontested material facts to lend support to a determination that Mr. Velázquez-de-Jesús' civil rights were violated by Sergeant Leslie Zeno-Santiago.

FOURTEENTH AMENDMENT: SUBSTANTIVE DUE PROCESS

Mr. Velázquez-de-Jesús raises a general due process violation in his amended complaint. Resolution of the substantive due process argument is best addressed by the below quote which in part applies to the uncontested facts:

> [Plaintiff] is in error when it posits that it can prevail on its substantive due process claim either by showing that [defendant's] conduct was conscience-shocking or by showing that her conduct deprived it of a protected liberty or property interest. This disjunctive proposition is incorrect. Where, as here, a plaintiff's substantive due process claim challenges the specific acts of a state officer, the plaintiff must show *both* that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property. See Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005) (stating that "[i]t

CIVIL 07-1393 (ADC)                              10

>is not enough to claim the governmental action shocked the conscience" but that a plaintiff must also show a deprivation of a protected interest). Consequently, "conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." DePoutot v. Raffaely, 424 F.3d 112, 118 n.4 (1st Cir. 2005).

Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006); Estate of Radamés Tejada v. Flores, 596 F. Supp. 2d 205, 221 (D.P.R. 2008). Pagán makes it clear that both deprivation of a liberty or property interest and conscience-shocking behavior are necessary. Mr. Velázquez-de-Jesús must show not only that he was deprived of a property or liberty interest, but that the acts of the state actors shocked the conscience of the community.

The Supreme Court includes as fundamental most, but not all, rights listed in the Bill of Rights, as well as certain unenumerated rights, such as the right to privacy. Fournier v. Reardon, 160 F.3d 754, 758 (1st Cir. 1998). "While the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to many areas." Id. "Tort law is one such area that remains largely outside substantive due process jurisprudence." Id. (quoting Skinner v. City of Miami, 62 F.3d 344, 346 (11th Cir. 1995)); Estate of Radamés Tejada v. Flores, 596 F. Supp. 2d at 222. A substantive due process claim is limited in scope. Otherwise, the lesser standard proposed by plaintiff equates itself under these circumstances

CIVIL 07-1393 (ADC)                            11

to a negligence standard.  Clearly, "[t]he substantive due process guarantee does not . . . serve as a means of constitutionalizing tort law so as to "impos[e] liability whenever someone cloaked with state authority causes harm." Pagán v. Calderón, 448 F.3d at 32 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)); Estate of Radamés Tejada v. Flores, 596 F. Supp. 2d at 222.  It is clear that there is no justiciable substantive due process violation in this case.

PROCEDURAL DUE PROCESS AND EQUAL PROTECTION

There is clearly no procedural due process violation outlined in the complaint or further in the pleadings.  Since the complaint merely mentions a due process violation, I address the other prong upon which relief may be granted.  (Docket No. 3, at 4, ¶ 25.)  "In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must first prove that he or she has a property interest as defined by state law and, second, that defendants, acting under color of state law, deprived him or her of that property interest without a constitutionally adequate process." Ramírez v. Arlequín, 357 F. Supp. 2d 416, 425 (D.P.R. 2005) (citing Mimiya Hosp., Inc. v. United States Dep't of Health & Human Servs., 331 F.3d 178, 181 (1st Cir. 2003)).  No deprived property interest has been identified or established.  As to the Equal Protection claim, the complaint fairs just as poorly.  (Docket No. 3, at 4, ¶ 25.)  Mr. Velázquez-de-Jesús has alleged generally that his Fifth Amendment right to the equal protection of the laws has been violated.  He

CIVIL 07-1393 (ADC)                              12

has not been specific as to what acts by what defendants denied him his right to equal protection, and of course has not rebutted the uncontested facts submitted by the defense. Thus there is no cognizable equal protection claim and little would be served in entertaining the equal protection claim with the others. See Gutiérrez v. Molina, 447 F. Supp. 2d 168, 176 (D.P.R. 2006), aff'd, 491 F.3d 1 (1st Cir. 2007).

## FOURTH AMENDMENT

There are three types of citizen-police encounters:  (1) consensual encounters, which involve a citizen's voluntary cooperation with an official's non-coercive questioning and which are not seizures within the meaning of the Fourth Amendment. See, e.g., Florida v. Bostick, 501 U.S. 429, 434 (1991); Michigan v. Chesternut, 486 U.S. 567, 574-76 (1988); (2) investigative detentions (Terry stops), which are seizures of limited scope and duration under the Fourth Amendment and that are justified only if articulable facts and reasonable inferences drawn from those facts support a reasonable suspicion that a person is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968); see, e.g., United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Acosta-Colón, 157 F.3d 9, 14 (1st Cir. 1998); and (3) arrests, which are seizures characterized by highly intrusive or lengthy detention and which require probable cause to believe that the arrestee has committed or is committing a crime. See Hayes v.

CIVIL 07-1393 (ADC)                            13

Florida, 470 U.S. 811, 815-16 (1985); United States v. Lambert, 46 F.3d 1064, 1067 (10th Cir. 1995); United States v. Seslar, 996 F.2d 1058, 1060 (10th Cir. 1993); United States v. Bloom, 975 F.2d 1447, 1451 (10th Cir. 1992).

Under the second scenario, addressed in the defendant's motion, it is clear in this case that the law enforcement officers had the requisite level of suspicion to support a Terry-stop. Mr. Velázquez-de-Jesús was wearing a hooded jacket with the hood over his head in a bank in Puerto Rico, not North Dakota in winter. He wore sunglasses inside the bank. His face was not visible due to the hood he had over his head and the sunglasses. His attire made bank employees and clients of the bank nervous. Were the Mayberry U.S.A. Police Department called, they might have been less cautious, but we do not live in Mayberry, and the glasses and hood invite serious and cautious police inquiry. Nothing further than a classic Terry stop occurred and no Fourth Amendment violation was triggered by the police action.

## SUPERVISORY LIABILITY

Only those individuals who participate in the conduct that deprived plaintiff of his rights can be held liable, since "there is no *respondeat superior* liability under section 1983." Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989) (citing Cristobal Miranda v. Giménez-Muñoz, 770 F.2d 255, 260 (1st Cir. 1985)); Wilson v. City of N. Little Rock, 801 F.2d 316, 322 (8th Cir. 1986).

CIVIL 07-1393 (ADC)                              14

Plaintiff alleges that the remaining defendant was responsible for the training of all defendant police officers in the proper manner of arresting a suspect felon in the performance of their duties as police officers.  (Docket No. 3, at 4, ¶ 27.)  Since the facts do not point to a violation of rights by any police officer, let alone a conspiracy among them, and let alone poor training, there is less of a violation by a supervising sergeant, particularly Sergeant Zeno-Santiago.  See, e.g., González Pérez v. Gómez Aguila, 312 F. Supp. 2d 161, 166 (D.P.R. 2004).  The defendant answered as much in his list of affirmative defenses.  (Docket No. 20, at 7.)

## STANDING UNDER § 1983

Plaintiffs Gian Carlos Velázquez-Barroso, Gloriana Velázquez-Barroso, Glorily Barroso-Muñoz, Ubaldo Velázquez-Rivera are family members of Mr. Velázquez-de-Jesús, and have all alleged that they suffered emotional distress and damages as a result of the alleged unlawful arrest suffered by him.  However, their right to recover damages if any are anchored in state law since civil rights are personal rights and their civil rights could not have arguably been violated.  See Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986); Torres v. United States, 24 F. Supp. 2d 181, 183 (D.P.R. 1998) (citing Brown v. Ives, 129 F.3d 209, 211 (1st Cir. 1997)); Casanas v. de León, 633 F. Supp. 22, 23 (D.P.R. 1986).  They only have standing to allege supplemental claims.

CIVIL 07-1393 (ADC)                              15

## QUALIFIED IMMUNITY

The remaining defendant pleads in the alternative his qualified immunity in his motion for summary judgment. He preserved this argument by adequately raising the affirmative defense in his answer to the complaint. (Docket No. 20, at 6.) "The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Tejada Batista v. Fuentes Agostini, 247 F. Supp. 2d 73, 75-76 (D.P.R. 2003) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). " In defining the limits of this good-faith defense, the Supreme Court has stated that '[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, . . . a person who suffers injury caused by such conduct may have a cause of action.'" Tejada Batista v. Fuentes Agostini, 247 F. Supp. 2d at 76 (quoting Harlow v. Fitzgerald, 457 U.S. at 819). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." Acevedo-García v. Vega-Monroig, 204 F.3d 1, 10 (1st Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Thus the court needs to determine (1) whether the constitutional right allegedly involved is a clearly established one; and (2) whether a reasonable official in the same circumstances would have

CIVIL 07-1393 (ADC)                        16

understood that his or her conduct violated that right.  See Fletcher v. Town of Clinton, 196 F.3d 41, 48 (1st Cir. 1999).  In other words, once it is determined that the alleged conduct violates a clearly established constitutional right, the court must still determine whether an objectively reasonable official with the information that he or she possessed at the time would have believed that his or her conduct was lawful.  See McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991); Tejada Batista v. Fuentes Agostini, 274 F. Supp. 2d at 76.

     The defendant is clearly entitled to qualified immunity based upon the facts as outlined in the uncontested statement of material facts as well as the supporting documentation.  The court must determine whether the constitutional right allegedly involved is a clearly established one.  If anything, Sergeant Zeno-Santiago was performing a classic Terry stop of a very suspicious individual and could not be aware that his conduct was violating clearly established statutory or constitutional rights of which a reasonable person would have known.  A consideration of the undisputed facts does not reveal any causal nexus between any act on the part of Sergeant Zeno-Santiago and Mr. Velázquez-de-Jesús.  Therefore, he is entitled to successfully invoke the affirmative defense of qualified immunity for his actions on the date of the events.

CIVIL 07-1393 (ADC)                                    17

SUPPLEMENTAL CLAIM

It is well-settled law that "[u]nder 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction." González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004); see also Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104-05 (1st Cir. 2004). "Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs., 383 U.S. 715, 726 (1966). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine– judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). This is such a case since the only remaining state claims would be the ones of family members under Article 1802 of the Civil Code of Puerto Rico. Therefore, having found that all federal claims should be dismissed, I believe that the court should not retain jurisdiction over plaintiffs' supplemental state-law causes of action.

In view of the above, I recommend that the court enter summary judgment dismissing the complaint in its entirety. The motion to dismiss filed by Leslie

CIVIL 07-1393 (ADC)                            18

Zeno-Santiago on March 20, 2009 (Docket No. 53) is subsumed in this recommendation because of the higher standard address here.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 8th day of September, 2009.

S/ JUSTO ARENAS
Chief United States Magistrate Judge